## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

JULIET BALLARD

      Plaintiff

v.

| |
|---|
| **COMPLAINT AND DEMAND FOR JURY** |
| File No.: |
| Hon. |

RICK SNYDER, in his official capacity as Governor
of the State of Michigan; THE MICHIGAN DEPARTMENT
OF HUMAN SERVICES; NICK LYONS, in his official
capacity as interim Director of the Michigan Department
of Human Services ("DHS"); BILL JOHNSON,
formerly Superintendent of the Michigan Children's
Institution, in his official capacity; BRUCE HOFFMAN,
Individually and in his former capacity as Consultant to
the Michigan Children's Institute;

WASHTENAW COUNTY DEPARTMENT OF
HUMAN SERVICES; RENEE ADORJAN, in her
Official capacity as Director for Washtenaw County
DHS; ROBIN RICHARDS, individually and in her
Official Capacity as Foster Care monitor for Washtenaw
County DHS; MARJORIE YAEGER, individually
and in her Capacity as Supervisor of Foster Care for
Washtenaw County DHS; ADELIA CLARK,
individually and in her Capacity as Supervisor
for Washtenaw County DHS; SHAWNNA MOORE,
individually and in her capacity as Foster Care monitor
for Washtenaw County; MARIE RUNNALS,
individually and in her capacity as investigator of
mal-treatment-in-care ("MIC");

LUTHERAN SOCIAL SERVICES of MICHIGAN -
Jackson County ("LSSM"); DIANA RIPLEY,
Director of LSSM in her official capacity;

GILLIAN WILTSHIRE, individually and in her
official capacity as Foster Care and Adoption
Worker for LSSM; BRANDYE TRASKY, individually
and in her official Capacity as Foster Care Licensing
Supervisor for LSSM.

_____/

## INTRODUCTION

1.     This is a 42 U.S.C. §1983 civil rights action involving a violation of Plaintiff's civil rights as guaranteed by the U.S. Constitution First, Fifth and Fourteenth Amendments and their corollaries under the Michigan Constitution; and, it involves violations of various Federal and State rights and laws, including a Title IV-E claim, common law conspiracy and intentional infliction of emotional distress.

2.     Plaintiff seeks declaratory and equitable relief; compensatory, exemplary and punitive damages; and costs and attorney's fees for the deprivation of her constitutional right to procedural due process, substantive due process and the violation of her First Amendment right to Freedom of Association.

3.     In the big picture, this case is about the Washtenaw County Department of Human Services (Wash. Co. DHS) unlawful removal of three siblings who had lived in Plaintiff's foster care home for over 4.25 years and their subsequent efforts to cover up their unlawful behavior by falsely accusing Plaintiff of abuse and neglect.   More narrowly, this case is about an extreme abuse of power; retaliation against a foster parent who refused to adopt her foster children; unequal treatment of an African-American foster parent; an agency's failure to comply with laws, rules and regulations; and improperly paying a foster care parent contrary to federal laws.

2

## JURISDICTION AND VENUE

4.  This action is brought pursuant to: i) 42 U.S.C. 1983 to redress violations of the United States Constitution; ii) Title IV-E to redress violations of Federal laws and regulations; iii) and other Federal and State laws and regulations to redress violations of federal statutes and state law. This Court has jurisdiction pursuant to 28 U.S.C §1331 and 28 U.S.C. § 1343(a)(1) – (4).

5.  Declaratory and equitable relief is sought pursuant to U.S.C. §§ 2201 and 2202.

6.  Venue is proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

### Plaintiff

7.  Plaintiff, **JULIET BALLARD**, is an African –American woman who was licensed as a foster parent by the Michigan Department of Human Services in 2007.

8.  Plaintiff is a highly educated and was a gifted foster parent.

9.  Plaintiff fostered three siblings - NS, SS, and AH from early 2009 until June of 2013 when the children were suddenly and harmfully removed from her home. NS, SS, and AH are children with extreme behaviors and needs.

10. Despite the antagonism, animus and unfair treatment Plaintiff received from certain members of the Washtenaw County DHS, she remained devoted to the children and provided a therapeutic home for them for over four years.

### Defendants

11. Defendant **MICHIGAN DEPARTMENT OF HUMAN SERVICES**, was established pursuant to Section 400.3 of the Social Welfare Act, MCL 400.1 et seq. Its principal office is located at 235 S. Grand Ave., Lansing, MI 48909.

12.    Defendant **RICHARD SNYDER** is the Governor of Michigan and is sued in his official capacity.  Pursuant to Article V, Section 1 of the Constitution of Michigan of 1963, the executive power of the State of Michigan is vested in the Governor.  Pursuant to Article V, Section 8 of the Constitution of Michigan of 1963, the Governor is responsible for ensuring that all executive departments and agencies within the State, including the Department of Human Service ("DHS"), faithfully execute and comply with applicable federal and state law.  Governor Snyder maintains his principal office at the Office of the Governor, 111 S. Capital Avenue, George W. Romney Building, Lansing, MI 48933.

13.    Defendant **NICK LYON** is the interim Acting Director the Michigan DHS and is sued in his official capacity.  Pursuant to Section 400.3 of the Social Welfare Act, MCL §400.1 et seq. and Executive Reorganization Order E.R.O No. 2004-4, Director Lyon is responsible for administering all DHS child welfare services and programs and assuring that all such services and program operate in conformity with constitutional, statutory, and regulatory requirements.  Director Lyon maintains his principal office at the Department of Human Services, 235 S. Grand Ave., Lansing, MI 48909.

14.    Defendant **WILLIAM JOHNSON** is the former Superintendent of the Michigan Child Institute ("MCI") and is sued in his official capacity. Pursuant to MCL 400.201 et seq., the Superintendent of the MCI shall represent the state as guardian of each child committed to the Michigan Children's Institute.

15.    Defendant **BRUCE HOFFMAN** was a consultant with the Michigan Child Institute and is now the Superintendent of the MCI.

16.    Defendant **WASHTENAW COUNTY DEPARTMENT OF HUMAN SERVICES** is a branch of the Michigan Department of Human Services.  Its principal office is located at 22 Center St., Ypsilanti, MI 48198.

17.    Defendant **RENEE ADORJAN** is the Director of the Wasthenaw County DHS.  Her principal office is located at 22 Center St., Ypsilanti, MI 48198.She is being sued in her official capacity.

18.    Defendant **ROBIN RICHARDS** is a Foster Care Worker/Monitor at Washtenaw County DHS and is being sued individually and in her official capacity; her principal office is located at 22 Center St., Ypsilanti, MI 48198.  Robin Richards was the DHS monitor for the majority of the 4.25 years that NS, SS and AH were placed with Plaintiff.

19.    Defendant **ADELIA CLARK** is the social services section manager at the Washtenaw County DHS is being sued individually and in her official capacity; her principal office is located at 22 Center St., Ypsilanti, MI 48198.

20.    Defendant **MARJORIE YAEGER** is a Supervisor of Foster Care in Washtenaw County and is being sued individually and in her official capacity; her principal office is located at 22 Center St., Ypsilanti, MI 48198.  Ms. Yaeger supervised Robin Richards and Shawnna Moore.

21.    Defendant **SHAWNNA MOORE** is a Foster Care Worker/Monitor at Washtenaw County DHS and is being sued individually and in her official capacity; her principal office is located at 22 Center St., Ypsilanti, MI 48198.  Shawnna Moore was the last DHS monitor on this case.

22.   Defendant **MARIE RUNNALS,** is a MIC investigator and is being sued individually and in her official capacity; her principal office is located at 2300 E. Grand River Ave., Howell, MI 48843.

23.   Defendant **GILLIAN WILTSHIRE,** is a former Foster Care and Adoption Worker at Lutheran Social Services of Michigan; her current address is unknown. She is being sued individually and in her official capacity.

24.   Defendant **LUTHERAN SOCIAL SERVICES OF MICHIGAN** was contracted by, and acted as agents for the Michigan Department of Human Services to provide foster care and adoption services.  Its principal office is currently located at 209 E. Washington, Jackson, MI 49201.

25.   Defendant **DIANA RIPLEY** is the director of Lutheran Social Services of MI – Jackson. Her principal office is currently located at 209 E. Washington, Jackson, MI 49201.  She is being sued in her official capacity.

26.   Defendant **BRANDY TRASKY** is a Supervisor of Foster Care Licensing at Lutheran Social Services of Michigan; her principal office is located at 209 E. Washington, Jackson, MI 49201. She is being sued individually and in her official capacity.

## GENERAL ALLEGATIONS

27.   In December of 2007 Plaintiff, an African American woman and resident of Dexter, Michigan in Washtenaw County, received a foster home license from the State of Michigan.  Lutheran Social Services of Michigan ("LSSM") based in Jackson, Michigan (formerly in Ann Arbor, MI) was the Certifying Agency for her license.

28.   LSSM was the agency that provided foster care services and supervision to Plaintiff and the children during all relevant times in in this case.

29. LSSM licensed Plaintiff despite Plaintiff not having completed all of the necessary training.

30. Plaintiff was initially licensed for girls ages 5 – 10, except children who abused substances, acted out sexually or who started fires were specifically excluded.

31. In February of 2009 the State of Michigan, through LSSM placed two African-American siblings – NS (male, DOB 2/22/02), SS (female, DOB 5/17/03) in Plaintiff's home. In April of 2009 LSSM placed a third sibling – AH (male, DOB 8/19/2014), in her home as well.

32. NS, SS, and AH experienced life-threatening levels of abuse and neglect until they were removed from their mother's home. Their home environment was chaotic and abusive. Drugs were routinely bought and sold during the night with the children used to broker the drug deals.  The children were starved, sexually exploited and witnessed violence against one another and against their mother.  NS shot AH with a loaded gun when AH was just 18 months of age when the children were left home alone.

33. A physician with the Child and Adolescent Psychiatry Dept. at the University of Michigan evaluated the three children and stated in a letter, "I have evaluated these children whose earl childhood history of abuse and neglect is one of the most horrifying that I have heard in my 25 years practicing child psychiatry."

34. All children are very low functioning and have extreme behaviors, including aggression and violence, destruction of property, sexually acting out, bet-wetting, running away, stealing, lying and withdrawing.

35. NS, SS, and AH were diagnosed with a variety of illnesses, mental health illnesses including Chronic Post Traumatic Stress Disorder  (PTSD) and Reactive Attachment

Disorder (RAD) – a severe mental illness common in neglected and abused children. NS was also diagnosed with mood disorder, NOS; ADHD; static encephalopathy (possible alcohol exposure in utero); fetal alcohol spectrum disorder; and nocturnal enuresis. SS was also diagnosed with ADHD; static encephalopathy; fetal alcohol spectrum disorder; mixed receptive expressive language disorder; mood disorder, NOS; cognitive impairment; and nocturnal enuresis and encopresis. AH's other diagnoses include: sleep disorder (insomnia); conduct disorder; ADHD; Encopresis; and fetal alcohol spectrum disorder. The three children required around-the-clock care and supervision because of their extreme behaviors.

36. The children committed thousands of dollars of damage to Plaintiff's home and personal property.

37. Defendant State of Michigan, through its agent LSSM, placed the children in Plaintiff's home contrary to her license without obtaining any sort of waiver, and thus violated R400.9402.

38. Pursuant to MCL 722.954 and Title 42 §675(5)(D), the DHS, through Defendant LSMM, had a duty to inform Plaintiff of all known emotional and psychological problems of the children and of all behavior problems of the children that might present any risk to the foster family.

39. LSSM failed to inform Plaintiff of the children's extreme behaviors and of the risks to her home and family that the children posed.

40. The children were evaluated by at least seven different medical professionals, including a MD hand-picked by the DHS, all of whom agreed the children could not function in society without the assistance of medication and required a high level of supervision.

41.   The children were prescribed large amounts of medication, including psychotropic medications, for their outbursts, sleeping problems and bed-wetting.

42.   During the last months the children were in Plaintiff's home doctors prescribed approximately eleven hundred (1,100) pills per months.  Over the 4.25 years the children lived with Plaintiff they were prescribed an estimated 40,000 – 48,000 pills.

43.   During the entire time the children were placed with Plaintiff, she provided a loving, caring and nurturing home for NS, SS, and AH. The children loved her and for the first time in their lives they lived in an environment where they felt safe and loved.

44.   The children referred to Plaintiff as "mom" and to Plaintiff's mother as "grandmother."

45.   The children celebrated holidays with Plaintiff and her family.

46.   The children went on trips with Plaintiff and her family.

47.   Plaintiff and the children had established a strong emotional attachment with one another having lived as a family for over 4.25 years.

48.   Plaintiff's family was the only real family the children ever knew and they trusted Plaintiff implicitly.

49.   Despite the children's extreme behaviors, the bigger challenge for Plaintiff was the way the Washtenaw County DHS mismanaged and sabotaged the case.

50.   The DHS case monitors treated Plaintiff with animus, disrespect and ill-will from the beginning.

51.   Plaintiff had to continually fight for services and support that were required in order to maintain the children in her home.

52.   Defendant's refused to provide multiple services to Plaintiff and the children that were recommended by numerous professionals.

53.   Defendant Washtenaw DHS employees questioned Plaintiff's assessments and statements about the children and accused her of providing misinformation to the doctors and therapists.

54.   The children's therapist of three years, Carla Hines, believes the case was difficult from the beginning, not because of the level of abuse the children sustained nor due to issues with the placement, but rather due to Plaintiff constantly having to advocate for the children's placement and for services that she felt the children were entitled to.

55.   Defendant Washtenaw County DHS asked Plaintiff to adopt the children multiple times, the last time being in approximately December of 2012.

56.   LSSM, through Defendant Wiltshire, asked Plaintiff two days after she removed the children if she wanted to "adopt the children now."

57.   Plaintiff could not adopt the children due to the potential loss of necessary and valuable services if she were to adopt them.

58.   Certain employees of the DHS retaliated against Plaintiff after she stated she would not adopt the children.

59.   The DHS threatened to remove the children from her care if she did not adopt them – which the DHS ultimately did.

60.   The DHS reduced Plaintiff's foster care payments after she stated she would not adopt the children.

61.   Despite the severe problems and extreme needs of the children, Plaintiff was able to provide a home for them for over 4.25 years until they were suddenly removed on 6/19/2013 without good cause, without proper notice and contrary to their best interest.

62.   In June of 2013 Defendants LSSM – on orders from Washtenaw DHS, wrongfully and contrary to law removed the children from Plaintiff's home and then, in a blatant attempt to cover up their wrongful action, falsely accused Plaintiff of abuse and neglect.

63.   Defendants who conducted an investigation of abuse against Plaintiff were biased and they used unreliable, incomplete and inaccurate information.

64.   The final investigative report was replete with false statements and inaccurate information, and it contradicted other reports.  Several key conclusions were based upon false premises.

65.   Defendant's subsequently placed Plaintiff on the Central Registry as a child abuser without so much as a hearing and then revoked her foster care license.

66.   On information and belief, after the children were removed they were taken to a facility in Detroit.  SS was hospitalized shortly thereafter and was given "body shots to make her sleep."

67.   On information and belief, the children were next transferred from Detroit to an institution in Lansing where it is believed the children remain today.

68.   After being placed on Central Registry Plaintiff hired counsel and incurred over $13,000 in legal fees in order to have the record corrected and/or expunged.

69.   Ultimately Plaintiff's abuse and neglect record was expunged and her foster care license was reinstated.

70.   However, Plaintiff is unable to foster children today due to the pronounced fear of DHS and the State of Michigan she developed as a result of her experiences while fostering NS, SS, and AH with Washtenaw Co. DHS and the State of Michigan.

**COUNTS I and II–Related to Unlawful Removal of NS, SS, and AH from Plaintiff's Foster Care Home**

**Count I - 42 U.S.C. § 1983 – Violation of Plaintiff's Procedural Due Process Rights as guaranteed by the 5th and 14th Amendments of the US Constitution and Article I, §17 of the Michigan Constitution;**

**Count II - 42 U.S.C. § 1983 – Violation of Plaintiff's Substantive Due Process Rights as guaranteed by the 5th and 14th Amendments of the US Constitution**

71.  Plaintiff incorporates paragraphs 1 to 70 as if fully restated herein.

72.  Count I applies to all Defendants except Rick Snyder, William Johnson, Bruce Hoffman and Marie Runnals.

73.  Count II applies to all Defendants except Rick Snyder, William Johnson, Bruce Hoffman and Marie Runnals.

74.  At all relevant times in this case, Washtenaw County DHS had a practice and custom of not complying with the following rules related to placement and changes in placement:

   a.  Completing Form DHS-31 within 90 days of initial placement and sending it to all required parties (see FOM 722-03, page 16 of 35);

   b.  Timely notifying a child's lawyer guardian ad litem of a change in placement (see FOM 722-03, page 18 of 35)

   c.  Not including all required parties in the Family Team Meeting (FTM), formerly known as a Team Decision Making Meeting (TDM) (see FOM 722-06B page 1)

   d.  Of not holding a FTM in conjunction with any placement change.

75.  The foster care supervisors and other supervisors of Washtenaw County DHS have a practice and custom of allowing the foster care workers to disregard its own internal policies and the rules and regulation as required by the State of Michigan in it Foster Care manual.

12

76. On June 19, 2013 Gillian Wiltshire suddenly and without notice removed NS, SS, and AH from Plaintiff's home.

77. Administrative Rule 400.12405 requires the state of Michigan to notify a foster parent of a change of placement in writing "no less than 14 calendar days, in advance, of the change, except when prior notification would jeopardize the child's care or safety."

78. MCL 712A.13b prohibits the state of Michigan from removing a child's placement in a foster care home except:

   (a) The person providing the foster care requests or agrees to the change.

   (b) Even though the person providing the foster care objects to a proposed change in placement, 1 of the following applies:

   (i) The court orders the child returned home.

   (ii) The change in placement is less than 30 days after the child's initial removal from his or her home.

   (iii) The change in placement is less than 90 days after the child's initial removal from his or her home, and the new placement is with a relative.

   (iv) *The change in placement is in accordance with other provisions of this section.  712A.13b ((1), emphasis added.*

79. LSSM removed the children pursuant to another provision of the statute - MCL 712A.13b(7).

80. MCL 712A.13b(7) provides that a child can be removed contrary to subsection (1) or (2) If "the agency has reasonable cause to believe that the child has suffered sexual abuse or nonaccidental physical injury, or that there is substantial risk of harm to the child's emotional well-being, the agency may change the child's foster care placement without complying with subsection (1) or (2)(b) or (c)."

81. On and before June 19, 2013, the DHS had no reasonable cause to believe any of the children suffered sexual abuse.

13

82.   On and before June 19, 2013, the DHS had no reasonable cause to believe any of the children suffered nonaccidental physical injury.

83.   On and before June 19, 2013, the DHS had no reasonable cause to believe there was a substantial risk of harm to the children's emotional well-being.

84.   Sadly, it was the State's sudden and wrongful removal from Plaintiff's home that caused grave and irreparable emotional harm to the children. (see **Exhibit A** - Letter from leading child expert Dr. Henry, Letter from Shirley Travis)

85.   In short, none of the criteria to justify a removal without a notice and hearing existed when Gillian Wiltshire removed the children on June 19, 2013.

86.   On the date Defendant Wiltshire removed the children from Plaintiff's home she provided Plaintiff with a form entitled "Foster Parent Notification of Move" (Form DHS-30)  (See **Exhibit B** - Foster Parent Notification Form)

87.   Defendants Wiltshire and Ripley checked box 5 of the form that indicated "the DHS has reason to believe that the child has suffered sexual abuse, or non-accidental physical injury or there is a substantial risk of harm to child's emotional well-being."

88.   Where there is no reason to believe a child has either suffered sexual abuse or non-accidental physical injury; or where there is no reason to believe there is a substantial risk of harm to the child's emotional well-being that worker has no choice and they cannot check box 5.

89.   Defendant Wiltshire informed Plaintiff that Shawna Moore, the DHS case monitor at that time, instructed her to check box 5 so that the children could be removed *before* a hearing could be held in front of the foster care review board.

90.   Ms. Wiltshire also informed Plaintiff that the CPS investigator called her and stated that she was under pressure to find something wrong with Plaintiff's home but was having difficulty doing so.[1]

91.   Ms. Wiltshire also informed Plaintiff that LSSM did not support the move because there was no reason to move the children and they had been fighting for about a week against the removal.

92.   Finally, Defendant Wiltshire informed Plaintiff that she would never again be a foster parent in Washtenaw County because "they [Washtenaw County DHS] don't like you."

93.   Defendants Washtenaw County DHS, LSSM, Clark, Yaeger, Richards, Moore, Wiltshire, Ripley, and Trasky knew there were no grounds to check box 5; however, Defendant Washtenaw County, through Clark, Yaeger, Richards, and Moore had already made the decision at a FTM (possibly called a permanency planning meeting) in May of 2013 that they were going to remove the children - a meeting Plaintiff should have been invited to but was not.

94.   Washtenaw County DHS also failed to comply with rules and procedure by not having a FTM (Family Team Meeting) just prior to removing the children. (FOM 722-03, page 23 of 35)

95.   MCL 712A.13b and Administrative Rule 400.12405 create a protected liberty interest for Plaintiff.

---

[1] CPS had been investigating an incident that occurred on June 13, 2013 involving NS. NS and his sibling were at the home of Mr. Johnson, an approved alternative care provider and he ran away. The CPS investigation was against Plaintiff even though the alleged incident occurred at Mr. Johnson's home. After a complete investigation the CPS concluded that NS lied (as he frequently did) and no abuse or neglect was substantiated against Plaintiff.

96.   Under the circumstances of this case, Plaintiff had a liberty interest in familial privacy that was created by virtue of the following:

   a.   Plaintiff had acted as the children's foster mother for over 4.25 years.

   b.   The children and the foster mother had an extremely strong bond as described by Dr. Henry, a preeminent expert in the field of abused children.

   c.   The children's biological parents had their parental rights terminated.

   d.   It was highly unlikely that any of these children would be adopted individually, let alone as a sibling group.

   e.   It was highly unlikely that these children would be placed together in any other residential foster home.

   f.   It is highly unlikely that any of these children individually would remain for any period of time in any other residential foster home other than Plaintiff's.

   g.   A long-term foster care placement with Plaintiff was likely the only option that would keep these children together and outside of an institution.

97.   Defendants had a duty to comply with state law and to give Plaintiff fourteen days advance notice prior to the removal.

98.   On information and belief, Defendants Washtenaw County DHS, LSSM, Ripley, Trasky and Yaeger knew that Defendant Moore instructed Defendant Wiltshire to check box 5.

99.   By checking box 5, Defendants Wiltshire acted outside of the scope of her authority which requires her to comply with state and federal law.

100.   By ordering or allowing Wiltshire to check box 5, Defendants Clark, Moore, Yaeger, Trasky and Ripley were acting outside of the scope of their authority that requires them to comply with the state and federal law.

101.   Defendants Wiltshire checked box 5 for improper purpose of circumventing the process and thereby to deny Plaintiff with due process under the law.

102.   Defendants Washtenaw County DHS, LSSM, Clark, Yaeger, Richards, Moore, Wiltshire, Ripley, and Trasky were acting maliciously, willfully and with reckless disregard to Plaintiff's rights when they colluded to check box 5 without good reason to do so.

103.   In checking box 5 Wiltshire was grossly negligent and in ordering and/or allowing Wiltshire to check box 5 Defendants Washtenaw County DHS, LSSM, Clark, Yaeger, Richards, Moore, Wiltshire, Ripley, and Trasky were grossly negligent.

104.   Defendants Washtenaw County DHS, LSSM, Clark, Yaeger, Richards, Moore, Wiltshire, Ripley, and Trasky knowingly and intentionally violated Plaintiff's procedural and substantive due process rights as guaranteed by the 5th and 14th Amendments to the US Constitution when they ordered and/or allowed Wiltshire to check box 5.

105.   Defendants LSSM and Washtenaw County DHS also disregarded the law and Plaintiff's procedural due process rights by not holding a required TDM concurrent with or prior to the sudden removal of the children.

106.   The policy and practice at Wasthenaw County DHS of not complying with laws, rules and regulations regarding removing children from a foster home has caused

Defendants Richards, Yaeger, Clark, Adorjan and Moore to feel that they had the right to violate Plaintiff's due process rights.

### Appeal to Foster Care Review Board

107. Plaintiff timely appealed to the foster care review board after the State removed the children. (FCRB)

108. An appeal to the FCRB was the only appeal option the law provided Plaintiff.

109. The hearing in front of the FCRB was an informal hearing where Plaintiff was not allowed to cross-examine witnesses and present her own witness.

110. The FCRB held the informal hearing and issued an opinion that the agency DID NOT demonstrate that it was in the children's best interests to move them from Plaintiff's home.

111. MCL 712A.13b(5) indicates that where there is a difference in opinion between the agency and the FCRB and where the child is under MCI jurisdiction, that the FCRB will so inform the MCI Superintendent of the disagreement.

112. The statute further requires that the "MCI Superintendent shall make a decision regarding the child's placement and shall inform each interested party what the decision is."

113. The FCRB did inform the MCI that it did not agree with the removal by Washtenaw County thereby resting the ultimate decision with the MCI Superintendent.

114. In fact, the MCI Superintendent did NOT make the decision; rather, Bruce Hoffman, a consultant of the MCI, issued an opinion on 7/25/13 that agreed with

the DHS that the children should not be returned to Plaintiff. (see **Exhibit C** - letter signed by Bruce Hoffman on 7/25/2013)

115.   The decision made by Bruce Hoffman was replete with factual inaccuracies and was arbitrary and capricious.

116.   The decision by Bruce Hoffman was contrary to the best interest of the children. (see **Exhibit A**)

117.   On information and belief, Bruce Hoffman was aware of the fact the Washtenaw County DHS wanted to remove the children from Plaintiff's home and that the Washtenaw DHS did not have any indication that the children should be removed pursuant to MCL 712A.13b(7).

118.   Bruce Hoffman, in upholding the DHS decision to remove the children, acted with malice and in concert with Defendants Washtenaw County DHS, Moore, Yaeger, Clark, LSSM, Wiltshire, Ripley, and Trasky to deprive Plaintiff of her substantive due process rights.

119.   Pursuant to MCL 712A.13b(5) Bill Johnson, as MCI Superintendent, had a duty to make the final decision as the children's placement.

120.   Bill Johnson failed to make the final decision and therefore Bill Johnson acted with gross negligence and with reckless disregard to Plaintiff's constitutional rights.

121.   Defendants Johnson and Hoffman violated Plaintiff's procedural due process rights as guaranteed by the Fifth and Fourteenth Amendments where Johnson failed to make the decision regarding whether to return the children to Plaintiff's home.

122.   Defendant DHS, through LSSM removed the children without cause and contrary to the best interest of the children.

19

123.   Pursuant to MCL 712A.13b, Plaintiff had no right to any type of court hearing after the children were removed because the children were under the jurisdiction of the MCI and only foster parents who have children that are temporary court wards are entitled to a court hearing in front of a judge.

124.   Defendants violated Plaintiff's procedural and substantive due process rights in removing the children without notice, without cause, without so much as a court hearing, and without following the limited procedures that Plaintiff was entitled to under statute and she now has regress through 42 U.S.C. §1983.

125.   Michigan law did not provide Plaintiff with a meaningful and prompt post-deprivation hearing and therefore the State of Michigan has violated Plaintiff's due process rights.

126.   Plaintiff was severely damaged after the children were removed.   She suffered emotional distress and depression over losing her family that had been intact for the prior four years.  Plaintiff lost sleep and isolated herself from her friends, family and supports.  She suffered, knowing the children she came to love would likely be institutionalized and/or separated from one another.

127.   For all of the above stated reasons, Plaintiff seeks compensatory and general damages and attorney fees.

### COUNT III – Declaratory Action the MCL712A.13b is Unconstitutional as Written and as Applied

128.   Plaintiff incorporates paragraphs 1 to 127 as if fully restated herein.

129.   Count III applied to Defendants Rick Snyder.

130.   The Fourteenth Amendment of the U.S. Constitution prohibits states from depriving a person of life, liberty or property without due process of law.

131.   Plaintiff has a liberty interest created by law in MCL 712A.13b and as such has an expectation of protected due process rights.

132.   A person who fosters a child who is under the jurisdiction of the MCI has no right to a fair hearing should the child be removed from their custody and should that decision be upheld by the MCI. (MCL 712A.13b(5))

133.   A person who fosters a child who is under the jurisdiction of the MCI does not have an opportunity to present evidence and witnesses and to cross examination witnesses in front of an impartial court officer.  (MCL 712A.13b(5))

134.   A person who fosters a child who is a temporary court ward on the other hand does have an opportunity for notice and a court hearing.  (MCL 712A.13b(5))

135.   The State of Michigan violated Plaintiff's Fourteenth Amendment Right to Equal Protection where it allows foster parents of children under the court's jurisdiction to have a fair hearing but did not allow Plaintiff to have a fair hearing.

136.   The State of Michigan violated Plaintiff's Procedural Due Process rights as guaranteed by the 5th and 14th Amendments of the Constitution where it allows foster parents of children under the court's jurisdiction to have a fair hearing but did not allow Plaintiff to have a fair hearing.

137.   For the reasons stated in the preceding two paragraphs, MCL 712A.13b(5) is unconstitutional where a party whose foster child is under MCI jurisdiction has no opportunity for a fair hearing in front of an impartial adjudicator when the child is removed on an emergency basis.

138. MCL 712A.13b(5) is unconstitutional as applied to Plaintiff where she fostered three children for 4.25 years and did not have the opportunity for a fair hearing upon their removal.

139. Plaintiff was severely damaged after the children were removed.   She suffered emotional distress and depression over losing her family that had been intact for the prior 4.25 years.  Plaintiff lost sleep and isolated herself from her friends, family and supports.  She suffered, knowing the children she came to love would likely be institutionalized and/or separated from one another.

140. For the reasons stated herein, Plaintiffs requests this court declare MCL 712A.13b(5) unconstitutional to the extent it deprives a foster parent of a child who is under the jurisdiction of the MCI of notice and a fair hearing following an emergency removal; and, Plaintiff seeks compensatory and general damages and attorney fees.

## COUNTS IV and V - Related to false allegations of abuse and neglect against Plaintiff

**Count IV–42 U.S.C. § 1983 - Due Process Rights as guaranteed by the Fifth and Fourteenth Amendments of the US Constitution and Article I, §17 of the Michigan Constitution in substantiating abuse and neglect without probable cause and without due process;**

**Count V - 42 U.S.C. § 1983 - Due Process Rights as guaranteed by the Fifth and Fourteenth Amendments of the US Constitution and Article I, §17 of the Michigan Constitution by placing Plaintiff on Central Registry without a hearing**

141. Plaintiff incorporates paragraphs 1 to 140 as if fully restated herein.

142. Count IV applies to Defendants Washtenaw County DHS, Adorjan, Clark, Yaeger, Richards, Moore, Runnels, LSSM, Trasky, Wiltshire and Ripley.

143. Count V applies to Defendant Snyder.

144. In May of 2013 Defendants Washtenaw County and/or LSSM held a FTM (possibly called a Permanency planning conference) and failed to include Plaintiff, as required by law.

145. At the May 2013 meeting Defendant Washtenaw County decided that it wanted to remove NS, SS, and AH from Plaintiff's home.

146. On information and belief, Washtenaw DHS informed LSSM that it wanted the children removed from Plaintiff's home.

147. On information and belief, LSSM opposed the removal.

148. In the week following the May 2013 FTM referenced above a person from the State of Michigan Licensing Department contacted Plaintiff by letter and informed her that she was selected for a "random inspection" of foster homes.

149. The state Licensing Department in fact inspected Plaintiff's home in May of 2013 and found NO violations of state law.

150. On information and belief, the "random" inspection of Plaintiff's home in May was not random at all, but rather was a fishing expedition and was conducted to harass Plaintiff.

151. On June 13, 2013 an incident involving NS occurred at Mr. Johnson's home. Mr. Johnson was the alternate caregiver for the children and was approved by the DHS.

152. Despite the incident being at Mr. Johnson's home, the CPS started an investigation against Plaintiff.

153. The investigation of Plaintiff following the June 13 incident was solely for the purpose of harassing and intimidating Plaintiff, as there were no allegations

involving Plaintiff and as such this was an improper investigation conducted with an improper purpose.

154.  The investigation of Plaintiff for abuse and neglect following the June 13, 2013 incident was conducted with malice and constituted a reckless disregard of Plaintiff's Fourteenth Amendment Constitutional right to due process of laws.

155.  By June 19 the DHS decided NOT to substantiate any abuse or neglect against Plaintiff related to the June 13, 2013 allegations involving Mr. Johnson.

156.  Nonetheless, on June 19, 2013, LSSM removed the children without notice to Plaintiff alleging substantial risk of harm to the children.

157.  The DHS is required by law to file a CPS complaint against the foster parent when a foster child is removed pursuant to MCL 712A.13b(7). (see FOM 722-03, page 19 of 35)

158.  On information and belief, after the DHS failed to substantiate any abuse or neglect related to the June 13 incident, Washtenaw County DHS, LSSM, Yaeger, Moore, Clark, Ripley, Trasky and Wiltshire conspired together to concoct abuse and neglect allegations against Plaintiff in order to deflect from their wrongful and illegal actions in removing the children without notice.

159.  This subsequent investigation was a blatant attempt to silence Plaintiff and was conducted in bad faith for the purpose to harass her.

160.  The DHS subsequently accused Plaintiff of improperly medicating the children.

161.  In fact, it was the State of Michigan who improperly medicated the children for a few days following their removal from Plaintiff's home by not giving them their prescribed medications.

162. Defendant Runnels, a MIC investigator, conducted the special investigation following the wrongful removal.

163. Runnels had a duty to conduct a fair and impartial investigation.

164. The investigation conducted by Runnels was conducted with malice and with the forgone conclusion that Plaintiff was guilty.

165. The investigation conducted by Runnels used unreliable and tainted evidence.

166. The final report issued by Runnels was replete with errors and contradicted other reports.

167. The conclusion by Runnels that there was a preponderance of evidence that Plaintiff committed abuse and neglect was made without valid proof and many of the conclusions were erroneous and based upon false premises.

168. In short, there was no probable cause to conclude Plaintiff committed abuse and neglect and the findings were arbitrary and capricious.

169. Defendant Runnels was grossly negligent in her investigation against Plaintiff and her finding of probable cause of abuse and neglect was grossly negligent and demonstrated willful misconduct.

170. Yet, the State of Michigan placed Plaintiff on Central Registry after MIC investigator Marie Runnels substantiated abuse and neglect by Plaintiff against her foster children: NS, SS, and AH.

171. On or about 9/18/13 the State of Michigan notified Plaintiff that she was being placed on Michigan's Central Registry naming her as a person responsible for: physical neglect, medical neglect, threatened harm of the foster children who had been in her care.

172. Pursuant to MCL 722.628(d)(3) and (4), a foster parent is automatically placed on Central Registry for abuse and neglect where the State has determined that a

preponderance of evidence exists to substantiate abuse or neglect against the child by the foster parent.

173.   Under Michigan law, a foster parent who is accused of abuse and neglect is not given an opportunity for a hearing in front of an impartial judge, and cannot present evidence and witnesses on their behalf.

174.   In other words, upon the finding of a special investigator a foster parent is punished and harmed without so much as a hearing.

175.   The State of Michigan subsequently revoked Plaintiff's foster care license after she was placed on Central Registry.

176.   Plaintiff was unable to continue fostering children after her license was revoked.

177.   Plaintiff had a protected liberty interest in being able to act as a foster parent.

178.   In this instance Plaintiff had a fundamental liberty interest in the right to have her foster family remain intact.

179.   Due process minimally entitled Plaintiff to a hearing before an impartial referee or judge before being placed on central registry as a child abuser.

180.   Due process entitled Plaintiff to present evidence and witnesses on her behalf before being placed on central registry as a child abuser.

181.   Plaintiff was employed at a school when the State placed her on Central Registry as a child abuser.

182.   Plaintiff feared her employer would discover she was on Central Registry and that she would subsequently lose her job.

183.   Defendant Runnels conducted her investigation in bad faith and in concert with Clark, Yaeger, Moore, Adorjan, LSSM, Trasky and Ripley.

184.   These Defendant's conduct in falsely accusing Plaintiff of abuse and neglect was willful misconduct.

185.   These Defendants wrongfully, intentionally and recklessly violated Plaintiff's due process rights.

186.   Defendant's placed Plaintiff on Central Registry as a child abuser despite there being no probable cause to believe that she committed abuse and neglect against the children.

187.   Plaintiff suffered anxiety, depression, mental anguish, an inability to sleep, embarrassment, humiliation and she isolated herself as a result of Defendant's outrageous conduct in constantly treating her with animus, frequent threats of removing the children, false allegations of abuse and neglect, being placed on Central Registry and having her foster care license removed.  Plaintiff also suffered because she was unable to visit with her mother, who is also a foster parent.

188.   For the reasons stated herein, Plaintiff is entitled to actual and exemplary damages and attorney fees.

**COUNT VI - 42 U.S.C. § 1983 Violation of Plaintiff's First Amendment Right**

189.   Plaintiff incorporates paragraphs 1 to 188 as if fully restated herein.

190.   Count VI applies to all Defendants except Johnson and Hoffman.

191.   Defendants Washtenaw County DHS, LSSM and all of the named Defendants who work at Washtenaw County and LSSM conspired to unlawfully remove the children from Plaintiff's home.

192.   Defendants Washtenaw County DHS, LSSM, Runnals and all of the named Defendants who work at Washtenaw County and LSSM conspired to falsely accuse Plaintiff of abuse and neglect.

193.   Plaintiff was never afforded a hearing prior to the finding of a preponderance of evidence that she committed child abuse or neglect.

194.   Due to the intentional actions stated in the two proceeding paragraphs, Defendant State of Michigan wrongfully placed Plaintiff on Michigan's Central Registry for child abusers.

195.   A person who is placed on Central Registry for child abuse cannot be in the presence of foster children.

196.   Plaintiff's elderly mother is a foster parent living in Grand Rapids, MI.

197.   As a result of being placed on Central Registry, Plaintiff was not allowed to visit with her mother in her mother's home when her mother's foster children were present.

198.   This prohibition effectively prohibited Plaintiff from seeing her mother.

199.   Plaintiff was unable to visit with her mother for the entire time she was listed on Central Registry, except for a few hours on Christmas day in 2013 when she received special permission to go to her mother's home.

200.   Plaintiff has a First Amendment right to Freedom of Association.

201.   Defendant, in wrongfully placing Plaintiff on Central Registry, impeded her freedom of association thereby violated her First Amendment right.

202.   Plaintiff suffered anxiety and depression over not being able to see her mother.

203.   For the reasons stated herein, Plaintiff is entitled to exemplary and punitive damages and attorney fees.

**COUNT VII – Federal Common Law Conspiracy by Violating 42 U.S.C. § 1985 (3)**
**COUNT VIII – Abuse of Process – State Claim**

204.   Plaintiff incorporates paragraphs 1 to 203 as if fully restated herein.

205.   Count VII applies to Defendants Washtenaw County DHS, LSSM, Adorjan, Clark, Yaeger, Moore, Runnels, Richards, Ripley, Trasky and Wiltshire.

206.   These named Defendants conspired together to unlawfully remove NS, SS, and AH from Plaintiff's foster home without due process of law; and, they wrongfully conspired to find by a preponderance of evidence that Plaintiff committed abuse and neglect for the purpose of covering up their wrongful removal.

207.   These named Defendants knew Plaintiff was entitled to receive fourteen days (14) notice before the children were removed but collectively decided to disregard this law.

208.   These named Defendants purposefully deprived Plaintiff of her procedural due process rights as guaranteed by the US Constitution and Michigan Constitutions.

209.   The conspiracy to wrongfully remove the children necessarily caused a false allegation of abuse and neglect to be reported.

210.   During the abuse and neglect investigation these Defendants improperly investigated by overlooking evidence, using tainted evidence, failing to obtain all available evidence, and drawing conclusions based upon false premises all to support their foregone conclusion that probable cause existed that Plaintiff committed abuse and neglect.

211.   Any one of the supervisors could have stopped the unlawful removal of the children.

212.   The Defendants acted with a willful and wanton disregard of Plaintiff's due process and equal protection rights.

213.   The conspiracy caused Plaintiff to lose the children she loved – a deprivation of her substantive due process rights.

214.   The conspiracy caused Plaintiff to lose her foster care license.

215.   The conspirators were initially motivated by their animus towards Plaintiff and later motivate to cover up their unlawful behavior.

216.   The Defendants, in conspiring to cause harm to Plaintiff and to deprive her of her constitutionally protected rights, acted beyond the scope of their job and acted with malicious intent.

217.   The conspirators were motivated against Plaintiff in part because she is a minority.

218.   Defendant's actions caused Plaintiff to hire counsel to attempt to have her record expunged and to be removed from Central Registry.

219.   Even despite ultimately having her record expunged and being removed from Central Registry, Plaintiff suffered severe emotional distress following the removal of the children, the subsequent allegations of abuse and neglect and placement on Central Registry.

220.   Plaintiff incurred thousands of dollars in legal fees for having to hire an attorney to petition to have her name expunged from Central Registry and to get her foster care license reinstated.

221.   For the above stated reasons, Plaintiff seeks actual damages, punitive damages, and attorney fees as a result of the conspiracy

222.  For the above stated reasons, Plaintiff seeks actual damages and attorney fees and costs related to the abuse of process claim.

### COUNT IX – Intentional Inflection of Emotional Distress in Violation of Michigan Law

223.  Plaintiff incorporates paragraphs 1 to 222 as if fully restated herein.

224.  Count IX applies to all Defendants except Snyder.

225.  Defendants Richards, Moore and Yaeger treated Plaintiff with animus and disrespect throughout all relevant times she was a foster parent. (see **Exhibit D** – Affidavit of Susan Sutton, paragraphs 50 – 52)

226.  Defendants Washtenaw DHS, Richards, Moore, Yaeger, Clark and Adorjan acted in concert to retaliate against Plaintiff when she refused to adopt the children.

227.  Contrary to 42 U.S.C 675(1)(B), Defendants Richards, Yaeger, LSSM, Trasky and Wiltshire  failed to provide Plaintiff and children with services recommended by professionals in order to sabotage the placement and to retaliate against Plaintiff.

228.  Defendants Washtenaw County DHS Richards, Yaeger, LSSM, Trasky and Wiltshire systematically withheld necessary services from the children and Plaintiff. (see **Exhibit E** – Affidavit of Carla Hines, paragraph 30)

229.  Defendant Richards lied in Court on at least one occasion in an attempt to have SS removed from Plaintiff's home. (see **Exhibit D** – paragraphs 45 and 46; see **Exhibit E** – paragraph 31)

230.  During an IEP for one of the children Defendant Richards stated to the effect "we can do anything we want – we are the State."

231.  Defendant Washtenaw County and Richards threated Plaintiff with removal of the children on multiple occasions because Plaintiff refused to adopt the children.

232.   Defendant Yaeger referred to Plaintiff as a "psychopath." (see **Exhibit E** – paragraph 25)

233.   Defendant Richards gave Plaintiff permission to remove the children from school for about 20 days so that Plaintiff could travel to care for her aging mother and then Richards later threatened Plaintiff with an education neglect charge. (see **Exhibit D** – paragraph 47)

234.   One as of yet identified employee of Washtenaw County DHS attempted to discredit Plaintiff with the children's school by informing Dexter schools that they suspect "something is going on in her home."

235.   The unlawful removal of the children from a home where they had lived for over 4.25 years without notice was outrageous conduct and was done intentionally with the ultimate goal of retaliating against Plaintiff because she would not adopt the children.

236.   The unlawful removal of the children from Plaintiff's home was done knowing these children would ultimately be institutionalized and knowing that once institutionalized the collective jobs of the Washtenaw County DHS employees would be easier as this was a difficult case to manage.

237.   The conspiracy to wrongfully accuse Plaintiff of abuse and neglect in part to cover their wrongful and unlawful removal of the children was extreme, outrageous and was done willfully and with wanton disregard to Plaintiff's constitutional rights.

238.   Plaintiff suffered anxiety, depression, mental anguish, an inability to sleep, embarrassment, humiliation and she isolated herself as a result of Defendant's outrageous conduct in constantly treating her with animus, frequent threats of removing the children, false allegations of abuse and neglect, being placed on Central Registry and having her foster care license removed.

239.   For the reasons stated herein, Plaintiff is entitled to actual and exemplary damages and attorney fees.

**COUNT X – Violation of Plaintiff's Equal Protection Rights as Guaranteed by the Fourteenth Amendment of the US Constitution and Article I, §2 of the Michigan Constitution**

240.   Plaintiff incorporates paragraphs 1 to 239 as if fully restated herein.

241.   This Count X applies to Washtenaw County DHS, Clark, Yaeger, Richards, Moore, and Runnals.

242.   The Fourteenth Amendment to the U.S. Constitution protects every person within the state's jurisdiction against intentional and arbitrary discrimination.

243.   Defendants treated Plaintiff differently than other similarly situation foster parents due their personal animus against her.

244.   The following is a list of some, but not all of the ways in which Defendants treated Plaintiff differently than other similarly situated foster parents:

   a.   Excluded her from a Family Team Meeting (FTM – also may be called permanency planning meeting) held in May of 2013 that the law entitled her to attend.

   b.   On information and belief, contacted licensing and asked a representative from licensing to conduct a "random" inspection of her home following the May, 2013 meeting.

   c.   Informed her on multiple occasions that she should not live in Dexter, Michigan – Dexter is a predominately white community and she and the children are African American.

d.   Did not believe her representation that she has a PhD and requested that she provide verification of her education.

e.   Failed to comply with the law, rules and regulations when LSSM removed NS, SS, and AH from her home.

f.   Unreasonably and intentionally delayed in making payments by months to the alternative caregiver, thereby jeopardizing the placement.

g.   Retaliated against Plaintiff by lowering the DOC level of care after she indicated she would not adopt the children.

h.   Failed to make timely retroactively reimbursement payments.

i.   Constantly questioned Plaintiff's assessment of the children and accused her of providing false information to the children's doctors.

j.   Accused Plaintiff of "not loving" the children.

k.   Informed her early on in the proceedings that a foster parent is NOT entitled to attend court hearings – when in reality foster parents are welcome and are provided notice of the hearings.

l.   Falsely accused of her abuse and neglect in order to cover their wrongfully behavior and to ensure that her foster care license would be revoked.

m.   Systematically failed to provide her and the children with the services the professional and doctors recommended for a successful placement.

n.   Acting unprofessionally and belittled Plaintiff during meetings and treated her with great disrespect.

o.   Retaliated against her when she requested additional services by lowering the DOC rate.

p.   Defendant Richards misrepresented the requirements necessary in order for Plaintiff to receiving additional funding by way of a SED waiver, informing her that she would have to agree to adopt the children in order to be eligible for the SED waiver.

q.   Falsely informed the Court that Plaintiff is only doing this "for the money."

245.   Defendant's actions were intentional, irrational and wholly arbitrary.

246.   Defendants have a duty to Plaintiff to treat her as they treat all similarly situated foster parents.

247.   Defendant's had no rational basis for the unequal treatment they perpetrated against Plaintiff.

248.   Plaintiff suffered anxiety, depression, mental anguish, an inability to sleep, embarrassment, humiliation and she isolated herself as a result of Defendant's outrageous conduct as stated in the preceding paragraphs.

249.   For all of the above stated reasons, Plaintiff seeks actual and punitive damages and attorney fees.

## COUNTS XI, XII and XIII – Related to payments for Foster Care Services

**Count XI - Title IV-E Claim through 42 U.S.C. 1983 for failure to provide timely and proper foster care reimbursement payments;**

**Count XII –Violation of Substantive and Procedural Due Process Rights as Guaranteed by the 5th and 14th Amendments to the US Constitution for failure to provide timely and proper foster care reimbursement payments through 42 U.S.C. 1983;**

**Count XIII - Violation of Procedural Due Process Rights as guaranteed by the 5th and 14th Amendments to the US Constitution for failure to provide Plaintiff with an opportunity to a fair hearing through 42 U.S.C. 1983**

250.   Plaintiff incorporates paragraphs 1 to 249 as if fully restated herein.

251.　Count XI applies to Michigan DHS, Lyons, Washtenaw County DHS, Adorjan, Yaeger, Richards, Moore, LSSM, Ripley, Wiltshire, and Trasky.

252.　Count XII Michigan DHS, Lyons, Washtenaw County DHS, Adorjan, Yaeger, Richards, Moore, LSSM, Ripley, Wiltshire, and Trasky.

253.　Count XIII applies to the Snyder and Lyons.

254.　Pursuant to 42 U.S.C. §671(a)(1) and 42 U.S.C. § 672 et. al and 42 U.S.C. § 675(4)(a) Plaintiff had a federal protected right to reimbursement of foster care payments and to foster care payment sufficient to cover the cost of food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement.

255.　Defendant State of Michigan failed to reimburse Plaintiff for travel expenses related to transporting the children to and from parent visits.

256.　Defendant State of Michigan failed to reimburse Plaintiff for the actual costs she incurred to care for these three children who had extraordinary needs.

257.　Defendants Washtenaw County DHS, Adorjan, Yaeger, and Richards purposefully and knowingly approved the DOC Supplement at a lower level than Plaintiff's foster children were qualified for.

258.　Defendant's personal animus towards Plaintiff contributed to improper DOC rates.

259.　Defendant Richards made a statement that Plaintiff has already received over $100,000.00 for caring for the children.  (see **Exhibit D** – paragraph 55)

260.    Defendant Richards stated at a court hearing in the Washtenaw County Family
Court that Plaintiff was doing this "for the money." (see **Exhibit D** – paragraph
55)

261.    Defendants Washtenaw County DHS, Richards, and Yaeger retaliated against
Plaintiff by lowering the DOC level after Plaintiff informed Richards that she
would not adopt the children.

262.    Contrary to FOM 903-03, Washtenaw DHS failed to ensure continuation of an
approved DOC rate without lapse of payment due.  Every six months the DOC was
withdrawn and later it was reinstated.

263.    Defendant State of Michigan routinely failed to make timely retroactive payments,
sometimes paying Plaintiff months later.

264.    Defendant State of Michigan sometimes failed to reimburse Plaintiff with the
proper payment amount when the retroactive payments did finally come.

265.    The State of Michigan routinely paid Mr. Johnson, the alternative caregiver,
months late for the alternative care he provided to the children, thereby
jeopardizing the placement.

266.    On information and belief, Defendants LSSM, Wiltshire, Ripley, and Trasky
believed Plaintiff should have received a higher DOC supplement yet they failed to
appeal the DOC level and they failed to inform Plaintiff they could institute an
administrative appeal on her behalf.

267.    Sometime in 2012 the State of Michigan offered a new program in Washtenaw
County whereby a foster parent of a child with a serious emotion disturbance

(SED) could be eligible for additional funds to support the child. This program was called the SED waiver program.

268.   The SED program was implemented with the goal of reversing the trend of institutionalizing children with SEDs.

269.   Plaintiff asked Defendant Richards about the SED waiver program and inquired as to whether her foster children would be eligible.

270.   Richards either purposefully or negligently misinformed Plaintiff – telling her that in order to qualify for the SED waiver Plaintiff would have to agree to adopt the children.

271.   There was no such requirement of adoption – only to agree to foster the children for at least a year.

272.   Ultimately the Washtenaw County Community Mental Health program, who were intimately aware of this family, helped Plaintiff apply and obtain for the SED waiver.

273.   Defendants also violated 42 U.S.C. §671(a)(1) by not properly compensating Plaintiff for the actual cost of caring for these children.

FAIR HEARING

274.   Pursuant to 42 U.S.C. §671(a)(12) Plaintiff had a federally protected right to a fair hearing before a State Agency where her request for a higher-level DOC Supplement was denied.

275.   Pursuant to 42 U.S.C. §671(a)(12) Plaintiff had a federally protected right to a fair hearing before a State Agency where Washtenaw County DHS routinely failed to timely review the DOC applications submitted to DHS by LSSM.

276.   Pursuant to 42 U.S.C. §671(a)(12) Plaintiff had a federally protected right to a fair hearing before a State Agency where the State of Michigan failed to make timely retroactive payments to Plaintiff.

277.   Pursuant to CFF 903-3 that was in place at the time Plaintiff fostered NS,SS, and AH, the State of Michigan had two processes by which a parent requesting a DOC can appeal:

    a.   Internal Review.  A foster provider or supervising agency/DHS may initiate a request for an internal review any time;

    b.   Administrative Review Process. This process has two paths:  i) a foster care provider supervised by the agency (DHS) can directly request an administrative review of either the level or the timeliness of the notification; ii) a foster care provider supervised by a private agency (PAFC) cannot request an administrative review – only the agency can. For both paths the administrative review was conducted first by the caseworker's supervisor and then, if denied and further appealed, another review was conducted by the local office director or designee.

278.   On information and belief, neither the internal review nor the administrative review offers a foster parent the opportunity for a "fair hearing before the state agency."

279.   At no time during Plaintiffs 4.25 years of caring for these children did any employee of LSSM ever inform Plaintiff that they could initiate an administrative review on her behalf.

280.   Even without guidance from LSSM, on or about September 22, 2012 Plaintiff emailed Robin Richards, the DHS case monitor at the time, and informed her that she would like to formally request an appeal for the DOC levels and asked for information regarding the process.

281.   Robin Richards informed Plaintiff that she could appeal in writing to her but that she did not know how long the process would take.

282.   FOM 903-03 indicates a review of the Doc rate should occur within 30 calendar days.

283.   Plaintiff did request a formal appeal; however, nobody at the DHS ever followed through with the appeal.

284.   Defendant State of Michigan and Michigan DHS violated 42 U.S.C. §671(a)(12) by not allowing Plaintiff to request a fair hearing regarding the DOC supplement and thus violated Plaintiff's substantive and procedural due process rights and she can claim damages through 42 U.S.C. §1983.

285.   All Defendants against whom these counts apply violated Plaintiff's right to due process as guaranteed by the 5th and 14th Amendments to the US Constitution.

286.   Plaintiff was severely damaged by not receiving due process vis-à-vis the DOC level and by not receiving foster care payments sufficient to cover the costs of caring for these three children with extreme special needs.

287.   For the above stated reasons, Plaintiff seeks payment for past title IV-E payments due that were wrongfully withheld and attorney fees and costs for having to file this case.

**COUNT XIV – Declare Unconstitutional as Applied and as Written the DHS Policy that a Foster Parent does not have a right to a fair hearing in front of an administrative agency to appeal a DOC rate and that a Foster Parent Supervised by a Private Agency does not have the right to request an administrative hearing as required under Title IV-E – 42 U.S.C 671(a)(12)**

288.   Plaintiff incorporates paragraphs 1 to 288 as if fully restated herein.

289.   This count XIV applies to Rick Snyder and the Michigan DHS.

290.   42 U.S.C 671(a)(12) provides that Plaintiff was entitled to a fair hearing regarding the foster care reimbursement payments she received.

291.   Plaintiff was not given a fair hearing after she informed Robin Richards she wished to appeal the DOC level on or about 9/22/2012.

292.   Defendant State of Michigan specifically denies a foster parent who is supervised by an agency from seeking an administrative review of a DOC. (see **Exhibit F -** CFF 903-3 dated 10-01-2004)

293.   CFF 903-3 is unconstitutional on its face and as it was applied to Plaintiff.

294.   CFF 903-3 denies Equal Protection as guaranteed by the 14th Amendment to the US Constitution to similarly situated foster parents where one group of parents can appeal a DOC level (those supervised directly by the DHS) but where another group cannot.

295.   CFF 903-3 should be declared unconstitutional to the extent a foster care parent supervised by an agency does not have the right to appeal a DOC determination.

296.   For the above stated reasons, Plaintiff seeks compensatory costs as well as attorney fees and costs for having to file this case.

**COUNT XV – Declare Unconstitutional as Applied and as Written MCL 722.628(d)(3) and MCL 722.628(d)(4) that allows a foster parent to be placed on Central Registry as a child abuser without due process**

297.    Plaintiff incorporates paragraphs 1 to 296 as if fully restated herein.

298.    This count XV applies to Rick Snyder.

299.    Pursuant to MCL 722.628(d)(3) and (4), a foster parent is automatically placed on
        Central Registry where the State has determined that a preponderance of evidence exists
        to substantiate abuse or neglect against a foster child by the foster parent.

300.    Under Michigan law, a MIC worker conducts the investigation where there are
        allegations of abuse or neglect against a foster parent.

301.    The MIC investigator is allowed to use hearsay, tainted evidence, incomplete evidence,
        etc. as a basis for their conclusions.

302.    In Plaintiff's case, as stated earlier, the investigation was biased, incomplete, used tainted
        evidence, and the final report contradicted other reports.

303.    Under Michigan law, the accused foster parent is not given an opportunity for a hearing
        in front of an impartial judge, and cannot present evidence and witnesses on their behalf
        when they are being investigated for abuse and neglect.

304.    Plaintiff's job was at risk when she was placed on Central Registry.  Plaintiff
        suffered extreme distress and anxiety while she was on central registry.

305.    Plaintiff had to incur thousands of dollars in legal fees to have her name removed
        from Central Registry.

306.    For the reasons stated herein, Plaintiffs requests this court declare MCL
        722.628(d)(3) and (4) unconstitutional to the extent it deprived Plaintiff of a fair
        hearing and to the extent it deprives all accused foster parents of the right to a
        hearing before being placed on Central Registry.

307.   For the above stated reasons, Plaintiff seeks compensatory costs as well as attorney fees and costs for having to file this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court:

a.   Assert jurisdiction over this action;

b.   Order that the identities of the unnamed children be safeguarded from identification by the use of pseudonyms in order to protect the children;

c.   Declare unconstitutional and unlawful pursuant to Rule 57 of the Federal Rule of Civil Procedure:

   i.   Defendants' violations of the procedural due process rights of Plaintiff as guaranteed by the Due Process Clause of the Fourteenth and Fifth Amendments to the United State Constitution;

   ii.   Defendant's violations of the substantive due process rights of Plaintiff as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution;

   iii.   Defendant's violations of Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the US Constitution.

   iv.   Defendant's violations of Plaintiff right to free association under the First Amendment of the U.S. Constitution;

   v.   Defendant's violation of the rights Plaintiff had under the *Adoption Assistance and Child Welfare Act of 1980*, 42 U.S.C. 670; the State of Michigan's Title IV-E State Plan, et seq.;

   vi.   MCL 712A.13b(5) to the extent it prohibited Plaintiff from

obtaining a fair hearing after the children were removed and where the FCRB disagreed with said removal;

vi.  MCL 722.628(d) to the extent it placed Plaintiff on Central Registry after a finding by a preponderance of evidence that she committed abuse or neglect where she was not given the right to a court hearing, to present evidence, etc. prior to being placed on Central Registry;

vii.  CFF 903-3 to the extent a foster parent is not entitled to a fair hearing before a state agency to appeal a DOC rate or the timeliness of a foster care payment reimbursement;

d.  Permanently enjoin Defendants from further subjecting Plaintiff to practices of harassment, intimidation, and violations of due process should she ever decide to foster children in Washtenaw County again.

e.  Order payment of past Title IV-E payments due that were wrongfully withheld from Plaintiff;

f.  Order equitable relief and the granting of an injunction that DHS be required to comply with Title IV-E laws and regulations and be enjoined from enforcing State policies or laws in contravention to Federal Law;

g.  Award Plaintiff compensatory and punitive damages for the past injuries and predictable future injury she will sustain due to Defendant's intentional inflection of emotional distress.

h.  Award Plaintiff compensatory and general damages, including attorney fees and costs, for the past injuries she sustained due to Defendant's violations of her: substantive and procedural due process rights, equal

protection rights, and First Amendment Rights as guaranteed by the US and Michigan Constitutions and by Federal and State law.

i.   Award Plaintiff compensatory damages for the damage the children did to her home;

j.   Award all interest permitted pursuant to federal and state law on all damages awarded;

j.   Award Plaintiff all of her costs, expenses, and reasonable attorney's fees incurred in having to bring this action; and,

k.   Award such other and further relief as deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this matter.


I declare the statements contained herein are true to the best of my information, belief and knowledge.

_____

Juliet Ballard



                                        Respectfully Submitted:



                                        _____
                                        Francie L. Novar (P66273)
                                        Attorney for Plaintiff
March 16, 2015                          117 N. First St., Ste. 111
                                        Ann Arbor, MI 48104

protection rights, and First Amendment Rights as guaranteed by the US and

Michigan Constitutions and by Federal and State law.

i. Award Plaintiff compensatory damages for the damage the children did to

her home;

j. Award all interest permitted pursuant to federal and state law on all

damages awarded;

j. Award Plaintiff all of her costs, expenses, and reasonable attorney's fees

incurred in having to bring this action; and,

k. Award such other and further relief as deemed appropriate by this

Honorable Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this matter.

I declare the statements contained herein are true to the best of my information, belief and

knowledge.

_____

Juliet Ballard

Respectfully Submitted:

_____

Francie L. Novar (P66273)
Attorney for Plaintiff
117 N. First St., Ste. 111
Ann Arbor, MI 48104

March 16, 2015