UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIET BALLARD; NS, a minor; SS, a
Minor and AH, a minor; through their
Next Friend, JULIET BALLARD,
an individual,

        Plaintiffs,                CIV. NO. 15-11039

        v.                    HON. TERRENCE G. BERG

WILLIAM JOHNSON, former
Superintendent of the Michigan
Children's Institute; BRUCE HOFFMAN,
former consultant to the Michigan
Children's Institute; ROBIN RICHARDS,
Foster care monitor for Washtenaw
County Department of Human Services
("DHS"); MARJORIE YAEGER, Supervisor
of foster care for Washtenaw County DHS;
ADELIA CLARK, supervisor for
Washtenaw County DHS; SHAWNNA
MOORE, foster care monitor for
Washtenaw County; MARIE RUNNALS,
investigator of maltreatment-in-care;
ANGENETTA CATES, formerly foster care
monitor for Washtenaw County DHS;
LUTHERAN SOCIAL SERVICES OF
MICHIGAN ("LSSM"); KISSIMMEE
REEVES, supervisor at LSSM; GILLIAN
WILTSHIRE, foster care and adoption
worker for LSSM; BRANDY TRASKY,
foster care licensing supervisor for LSSM;
CASEY SOMERVILLE, licensing worker for
LSSM,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS AND/OR FOR
SUMMARY JUDGMENT (DKTS. 37, 38, 39, 40, 43, 49, 50, 51) AND DENYING
PLAINTIFF'S MOTION TO DISQUALIFY THE MICHIGAN CHILDREN'S
INSTITUTE AS GENERAL REPRESENTATIVE AND FOR
<u>APPOINTMENT OF NEXT FRIEND AND GUARDIAN AD LITEM (DKT. 69)</u>**

     This is a civil rights action, concerning the State's removal of minor foster
children from their former foster mother, Plaintiff Juliet Ballard's, home. The
children, Plaintiffs NS, SS, and AH, are siblings; Plaintiff Ballard had cared for
them as their foster parent for over four years before their removal.  As a result of
the removal proceedings, Plaintiff Ballard's foster care license was temporarily
revoked and she was placed on the State's Central Registry, which is a list of
individuals who have abused or neglected children.  Plaintiff Ballard alleges
generally that these actions violated her rights to due process and equal protection,
and violated state tort law.  More particularly, Plaintiff alleges that NS, SS, and AH
were wrongfully removed from her home, and that Defendants tried to cover up
their unlawful conduct by falsely accusing Plaintiff of abuse and neglect and
improper administration of the children's medications.

     Before the Court is Defendant Lutheran Social Service of Michigan's (LSSM)
motion to dismiss (Dkt. 37), Defendants Gillian Wiltshire, Brandy Trasky, and
LSSM's motion for partial summary judgment as to all state claims (Dkt. 38),
Defendants Gillian Wiltshire, Brandy Trasky, and LSSM's motion for summary
judgment (Dkt. 39), Defendants LSSM, Gillian Wiltshire, and Brandy Trasky's
motion to dismiss (Dkt. 40), Defendants William Johnson, Bruce Hoffman, Robin
Richards, Adelia Clark, Marjorie Yaeger, Shawna Moore, Marie Runnals, and

Angenetta Cates's (the "State Defendants") motion to dismiss (Dkt. 43), Defendants Kissimmee Reeves and Casey Somerville's motion for partial summary judgment (Dkt. 49), Defendants Kissimmee Reeves and Casey Somerville's motion for summary judgment (Dkt. 50), Defendants Kissimmee Reeves and Casey Somerville's motion to dismiss (Dkt. 51), and Plaintiff Juliet Ballard's motion to disqualify Michigan Children's Institute as the children's representative and appoint a next friend or guardian ad litem (Dkt. 69).[1]

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted, that Plaintiff lacks standing to assert claims on behalf of the children, and that Defendants are immune from suit.  For the reasons set forth below, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**[2], Plaintiff's motion to disqualify the superintendent of the Michigan Children's Institute as the children's guardian is **DENIED**.  Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**, Plaintiff's state claims are **DISMISSED WITHOUT PREJUDICE**, and any claims brought on behalf of the children are **DISMISSED WITHOUT PREJUDICE**.

## BACKGROUND

In December 2007, the State of Michigan granted Plaintiff Juliet Ballard ("Plaintiff") a foster care license, certified by Lutheran Social Services of Michigan

---

[1] If this description appears duplicative, it is that way because defense counsel for Lutheran Social Services, and its employees, filed seven dispositive motions largely covering the same ground and needlessly congesting the docket.  The bulk of these briefs contain overlapping arguments, and so the Court will discuss the jointly raised issues in this Order.  Consolidating common arguments in combined briefs is the preferred practice that the Court would advise counsel to adopt in the future.

[2] The particular disposition of each motion is listed in the conclusion section, below.

3

("LSSM") (Dkt. 29, Amend. Compl., Pg ID 184).  In early 2009, Plaintiff became a foster parent to siblings NS, SS, and AH (the "Children"), all of whom are minors with extreme needs (*Id.*).  The Children had previously grown up in a chaotic environment, surrounded by drugs and violence, in which they were mistreated, starved and sexually exploited (*Id.* at Pg IDs 187-188).  The Children were aggressive and violent, they acted out sexually, wetted their beds, ran away, stole, and lied among other things (*Id.*).  The Children were diagnosed with a variety of mental and mood disorders (*Id.*).  Due to these circumstances, medical professionals determined that the Children could not function in society without the assistance of medication and required a very high level of supervision (*Id.* at Pg ID 189).

The Children remained in Plaintiff's home until June 2013, when they were removed – pursuant to Mich. Comp. Laws § 712A.13b(7)[3] – by the Department of Human Services (DHHS) based on an alleged concern that the Children were being abused and neglected by a babysitter, and that Plaintiff was improperly administering the Children's medication (*Id.* at Pg ID 182).  Plaintiff alleges that there was no "reasonable cause" to justify the emergency removal of the Children (*Id.*, Pg ID 191).  Plaintiff challenged the removal, as allowed by statute, and at a hearing on June 27, 2013, the Foster Care Review Board (FCRB) found that removing the Children from Plaintiff's home was *not* in the Children's best interest (*Id.*, Pg. ID 195-196).  Because the FCRB disagreed with DHHS on the change in placement, the matter was referred to the then-superintendent of the MCI,

---

[3] This statute allows for an emergency removal of a foster child if, among other reasons, there is reasonable cause to believe there is a substantial risk of harm to the child's well-being.

Defendant William Johnson, pursuant to Mich. Comp. Laws § 712A.13b(5). This statute provides that, when there is a difference in opinion between the foster care agency and the FCRB, the MCI superintendent has the final authority regarding a child's placement. MCI consultant (and, later MCI superintendent) Defendant Bruce Hoffman conducted an investigation and drafted a decision issued July 25, 2013, which was adopted and approved by Johnson. Hoffman and Johnson concluded that the change in placement *was* in the best interest of the Children and consequently they should not be returned to Plaintiff (*Id.*, Pg. ID 240-241). Under Michigan law, the MCI superintendent has final authority over the placement of MCI wards. *See* Mich. Comp. Laws § 712A.13b(5).

As a result of the removal proceedings, Plaintiff was placed on the Central Registry, and her foster care license was suspended (*Id.* at Pg ID 203). Because she was placed on the Central Registry, Plaintiff contends that she was unable to visit her own mother, who was also a foster parent, when her mother's foster children were present (*Id.* at Pg ID 204). Plaintiff hired an attorney to contest her placement on the Central Registry and, on April 3, 2014, Plaintiff's name was removed from the Central Registry (*Id.* at Pg ID 205).

In May 2014, Plaintiff began a Corrective Action Plan, in which she did not admit to any wrongdoing but affirmed her commitment to follow the laws and policies for foster care licensing in order for her to return to fostering (*Id.* at Pg ID 205). Her foster care license was then reinstated (*Id.*). In December 2014, however, when Plaintiff applied for renewal of her foster care license, Plaintiff alleges that

5

Defendant LSSM told her it had placed her on a list with other foster parents who cannot have children placed with them (*Id.* at Pg ID 206).

### a) *Defendants*

Defendant William Johnson was, at the time of the acts complained of, superintendent of the Michigan Children's Institute ("MCI") and is sued in his individual capacity. Pursuant to Mich. Comp. Laws § 400.201 *et seq.*, the MCI superintendent represents the state as guardian of each child committed to the MCI. Defendant Bruce Hoffman was, at the time of the acts complained of, a consultant with MCI and later became the superintendent of MCI. He no longer serves in this role. The current MCI superintendent is Mary Rossman; she is not a defendant in this lawsuit.

Defendant Robin Richards is a foster care worker/monitor at Washtenaw DHS. Defendant Adelia Clark is the social services section manager at Washtenaw DHS. Defendant Marjorie Yaeger is a supervisor of foster care at Washtenaw DHS. Defendant Shawnna Moore is a foster care worker/monitor at Washtenaw DHS. Defendant Marie Runnals is a maltreatment-in-care investigator for the State of Michigan, Department of Health and Human Services. Defendant Angenetta Cates is a former Washtenaw DHS foster care worker.

Defendant Gillian Wiltshire is a former foster care and adoption worker at LSSM. Defendant Lutheran Social Services of Michigan was contracted by and acted as agents for the Michigan DHHS to provide foster care and adoption services. Defendant Kissimmee Reeves was, at all relevant times, the foster care supervisor

6

for LSSM.  Defendant Brandy Trasky is a supervisor of foster care licensing at LSSM.   Defendant Casey Somerville was, at all relevant times, a LSSM licensing worker.

### b)  Plaintiff's Complaint

Plaintiff filed an Amended Complaint (Dkt. 29) against the above-referenced Defendants.  Plaintiff does not seek to have the Children returned to her care.  Rather, Plaintiff's Complaint seeks a ruling, in the form of a declaratory judgment, that two Michigan statutes are unconstitutional – Mich. Comp. Laws § 712A.13b(7) and Mich. Comp Laws § 722.628d.  Plaintiff also requests money damages and attorney's fees.  Plaintiff complains that Defendants violated her due process rights (Counts I, II & IV), violated her right to equal protection (Count III), violated her First Amendment right to familial association (Count V) and engaged in a conspiracy to violate her constitutional rights (Count VI).  Plaintiff also alleges state law claims of abuse of process (Count VII), and intentional infliction of emotional distress (Count VIII).

### c)  Pending Motions

The motions before the Court advance the following arguments.  Defendant LSSM argues that the claims against it should be dismissed pursuant to Rule 12(b)(6) (Dkt. 37).  Defendant LSSM argues that there are no specific allegations directed at it nor does Plaintiff allege that LSSM had a policy or practice that violated Plaintiff's rights (*Id.* at 3).  Defendants Gillian Wiltshire, Brandy Trasky (social workers employed by LSSM), and LSSM seek partial summary judgment as

to all state claims because there is no genuine issue of material fact, and on the facts before the Court, they are immune from liability under state law (Dkt. 38).  In another motion for summary judgment, these same Defendants argue that they are entitled to absolute or qualified immunity (Dkt. 39).  In a third motion, these same Defendants move to dismiss the case on the ground that Plaintiff does not have standing to represent the interests of the Children or to seek relief on their behalf (Dkt. 40).

Defendants William Johnson, Bruce Hoffman, Robin Richards, Adelia Clark, Marjorie Yaeger, Shawna Moore, Marie Runnals, and Angenetta Cates (the "State Defendants") filed a motion to dismiss based on lack of standing and immunity under state and federal laws (Dkt. 43, p. 2).  Defendants Kissimmee Reeves and Casey Somerville filed three motions:  a motion for partial summary judgment as to all state claims because they acted within the "course and scope of employment" (Dkt. 49); a second motion for summary judgment because there is no genuine issue of material fact and they have either absolute or qualified immunity (Dkt. 50); and a third motion to dismiss on the ground that the Plaintiff lacks standing to bring claims on behalf of the Children (Dkt. 51).

Plaintiff also filed a motion, arguing that the superintendent of the MCI should be disqualified as the Children's general representative for the lawsuit due to a conflict of interest, because two of the MCI's former superintendents are Defendants in this lawsuit.  Plaintiff requests the Court to appoint Jessica Yvonne

Ballard, Plaintiff's daughter, as next friend or guardian ad litem to sue on behalf of the Children (Dkt. 69, p. 3-4).

## I.   ANALYSIS

### A. The Standard for Failure to State a Claim upon which Relief can be Granted

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. The Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001). "It is well established that statements appearing in a party's brief are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon

which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). There is no genuine dispute where one party's version of the facts is blatantly contradicted by objective evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

### C.  *Plaintiff Does Not Have Standing to Represent the Children*

At the outset, the Court first considers Defendants' argument that Plaintiff lacks standing to represent the interests of the Children in this litigation. Rule 17(c) of the Federal Rules of Civil Procedure governs a minor or incompetent's access to federal court. It directs that a minor or incompetent may sue in federal court through a duly appointed representative which includes a general guardian, committee, conservator, or like fiduciary. *See* Fed. R. Civ. P. 17(c)(1). If a minor lacks a general guardian or a duly appointed representative, Rule 17(c)(2) directs the court either appoint a legal guardian or next friend, or issue an order to protect a minor or incompetent who is unrepresented in the federal suit. *See* Fed. R. Civ. P. 17(c)(2).

Plaintiff concedes that she does not have standing to represent the Children, as she is not presently the Children's guardian. By operation of statute, the Children's duly appointed guardian is the MCI superintendent. *See* Mich. Comp. Laws § 400.203. Currently, the MCI superintendent is Mary Rossman, who is not a defendant in this case and was not involved in any of the decisions of which Plaintiff now complains. However, Plaintiff filed a motion to disqualify the MCI superintendent as the Children's guardian (Dkt. 69), and to appoint Plaintiff's

11

daughter (Jessica Ballard) as the Children's guardian ad litem or next friend for purposes of this litigation.  Plaintiff argues that because two former MCI superintendents are Defendants in this case, there is an inherent conflict of interest in having the current MCI superintendent act as the Children's general guardian. This argument is not well-taken.  The current MCI superintendent, Mary Rossman is not a party to this litigation and as guardian is charged with making decisions in the best interest of the Children.  There are no allegations of specific facts that show that Superintendent Rossman is unable to exercise independent and impartial judgment as guardian acting in the interest of the Children. And the fact that two predecessor superintendents are Defendants in this matter does not establish that the current superintendent is impartial or incapable of adequately representing the interests of the Children.

Second, Plaintiff's relies on *Dwayne B. v. Granholm*, Case. No. 06–13548, 2007 WL 1140920, at *6 (E.D. Mich. April 17, 2007), for the proposition that a federal court can appoint former foster parents (or in Plaintiff's case, the former foster parent's adult child) as a next friend for a minor to represent them in federal litigation.  Unlike the *Dwayne B.* case, however, here Plaintiff seeks monetary damages on her own behalf and for the Children.  The *Dwayne B.* litigation was about system-wide reform and sought equitable relief.  This also appears to be true of the other cases relying on *Dwayne B.* for the proposition proffered by Plaintiff. *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 81 (1st Cir. 2010); *Tinsley v.*

12

*McKay*, No. CV-15-00185-PHX-ROS, 2015 WL 9690914, at *1 (D. Ariz. Sept. 29, 2015); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 150 (D. Mass. 2011). While Plaintiff here is seeking a declaratory judgment as to the constitutionality of two state statutes, the bulk of Plaintiff's claims seek monetary damages for alleged constitutional violations and state-law torts (Dkt. 29, Am. Comp., Counts I, II, IV-VIII). Plaintiff has not cited any case law authorizing the appointment of an interested party with no current ties as next friend in a suit that is primarily for money damages. Any claim for monetary relief brought by the Children should be prosecuted on their own behalf, and not joined with the claims of other parties, such as Plaintiff or her adult daughter, whose interests may be in conflict with those of the Children.

As such, Plaintiff's motion to disqualify the current MCI superintendent as the Children's guardian, and to appoint Plaintiff's daughter as the Children's next friend, is not well-taken and is denied. The claims brought on behalf of the Children in this litigation are dismissed without prejudice, as Plaintiff lacks standing to raise such claims.

### D.  Plaintiff's Claims Relating to the Removal of the Children Fail to State a Claim

The Court now turns to Plaintiff's own claims, starting with Plaintiff's claims that she was denied due process and equal protection with respect to the emergency removal proceedings (Counts I, II, III). These claims allege that Defendants violated Plaintiff's constitutional rights by wrongfully removing the Children on an emergency basis.

The claims must fail because the Sixth Circuit has held that foster parents do not have a protected liberty interest with respect to the continued custody of foster children who may be in their care.  Indeed, the Sixth Circuit held that "[w]hile this court recognizes the strong emotional bond that might evolve in a foster care situation, we hesitate to characterize this relationship as a constitutionally protected liberty interest. The nature of the foster care relationship is distinctly different from that of the natural family; namely, it is a temporary arrangement created by state and contractual agreements." *Renfro v. Cuyahoga Cty. Dep't of Human Servs.*, 884 F.2d 943, 944 (6th Cir. 1989).  The Court went on to say that "[t]he temporary nature of the foster care relationship provides sufficient notice to all participants that their rights are limited. Therefore, the [plaintiffs'] argument that these rigid legal guidelines ignore the special relationship which developed during the six years [the foster child] was in their care is insufficient to support a § 1983 action." *Renfro*, 884 F.2d at 944.

Other federal Courts of Appeal have likewise held that foster parents do not have constitutionally protected liberty interests in the custody, care, and management of their foster children.  The liberty interest that biological families possess in their privacy and autonomy arises not as a matter of state law, "but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition.'" *Smith v. Org. of Foster Families For Equal. & Reform*, 431 U.S. 816, 845 (1977) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977)).  By contrast, "[w]hatever emotional ties may develop between foster parent and foster

14

child have their origins in an arrangement in which the State has been a partner from the outset." *Id*. When the state interferes with a foster family, the state is not interfering "with a relationship having its origins entirely apart from the power of the State," but rather with a family that "has its source in state law and contractual arrangements." *Id*. The nature and extent of the liberty interests possessed by foster families, if any, must therefore be derived from "the expectations and entitlements of the parties" under state law, and not the Due Process Clause. *See id*. at 845-46; *Rodriguez v. McLoughlin*, 214 F.3d 328, 337 (2d Cir. 2000) ("[A]ny liberty interest arising in the preservation of a biologically unrelated foster family would arise, if at all, only under state law"); *Procopio v. Johnson*, 994 F.2d 325, 328 (7th Cir. 1993).

While the possibility therefore exists that state law could afford foster families constitutionally protected interests, "attempt[s] to establish a due process liberty interest between foster parents and children have continued to fail." Kevin B. Frankel, *The Fourteenth Amendment Due Process Right to Family Integrity Applied to Custody Cases Involving Extended Family Members*, 40 Colum. J.L. & Soc. Probs. 301, 333 (2007). One court, considering the question under New York law, found that state law did not afford a foster family a constitutionally protected liberty interest in the integrity of their relationship, which meant that their rights were not violated when the state allegedly removed the foster child without adequate justification and without providing notice and an opportunity to be heard. *See Rodriguez*, 214 F.3d at 339-41. Another court, recognizing that Illinois law

15

affords the state the "ultimate prerogative to terminate the foster family unit," also declined to recognize the existence of any liberty interest in a foster family's relationship, which meant that the family was not entitled to notice and an opportunity to be heard before the state removed the foster child and transferred custody of her back to her biological mother. *See Procopio*, 994 F.2d at 329-30 (observing that the court had previously reached the same conclusion under Indiana law). Others have reached similar conclusions under the laws of Florida, *see Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 814 (11th Cir. 2004), and Georgia, *see Drummond v. Fulton Cty. Dep't of Family & Children's Servs.*, 563 F.2d 1200, 1206-07 (5th Cir. 1977) (en banc); *see also Wildauer v. Frederick Cty.*, 993 F.2d 369, 373 (4th Cir. 1993) (concluding, without reference to state law, that a foster parent did not have any constitutionally protected liberty interest in retaining possession of her foster children). A foster parent's interest is derived from the state and may differ according to state law and particular circumstances. *See Smith v. Org. of Foster Families for Equal. and Reform*, 431 U.S. 816, 845–46, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) ("[W]here ... the claimed interest derives from a knowingly assumed contractual relation with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties"). The same analysis also bars Plaintiff's Equal Protection claim. Recasting her claim as an Equal Protection violation does not save Plaintiff from the legal reality that the foster parent-foster child relationship does not give rise to a constitutionally protected liberty interest.

16

Accordingly, Plaintiff's claims that the removal of the Children from her home violated her constitutional rights do not state a valid claim upon which relief can be granted, and they must therefore be dismissed. To the extent that Defendants seek dismissal of Plaintiff's claims on alternate grounds – such as abstention or absolute immunity – those portions of Defendants' motion are denied as moot, as the Court finds that Plaintiff has failed to state a claim.

### E. Plaintiff's Claims Regarding Her Placement On The Central Registry Are Barred By Qualified Immunity

The Court next turns to Plaintiff's claims concerning her placement on the State's Central Registry. The Court finds that these claims are barred by qualified immunity. The focus of this claim is an allegation that Defendants violated Plaintiff's constitutional rights by placing her name on Michigan's Central Registry.

Qualified immunity shields public officials from civil liability unless the plaintiff can show: (1) the official violated a statutory or constitutional right, and (2) that right was "clearly established" at the time of the challenged action. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Courts have discretion to analyze these steps in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Bypassing the constitutional question is particularly appropriate where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. at 237, 129 S.Ct. 808.

17

Defendants are entitled to qualified immunity with respect to their decision to place Plaintiff's name on the Central Registry. First, the record contains evidence that Defendants had a reasonable objective basis to conclude that child abuse or neglect occurred. The report prepared by the Foster Care Review Board (Dkt. 29, Ex. 2, Pg IDs 231-239) details allegations of corporal punishment against the Children by their babysitter. While this report ultimately recommends that the Children be placed back in Plaintiff's care, it also notes that a review concerning Plaintiff's administration of medication to the Children is "ongoing." The MCI superintendent did not agree with the recommendation of the Foster Care Review Board, and instead found that Plaintiff had "not adequately provided for the [C]hildren's physical, social and emotional wellbeing. This is reflected by the length of time the [C]hildren have resided with [Plaintiff] vs. the progress that they have made, the extensive use of medication with minimal positive results, the [C]hildren's repeated allegations of mistreatment, excessive use of alternate care and an unwillingness to provide permanency [i.e., adopt the Children]" (Dkt. 29, Ex. 3, Pg IDs 240-241).

Thus, Defendant Hoffman undertook a holistic review of the Children's wellbeing in making his decision. The record belies Plaintiff's allegations that Defendants invented abuse and neglect allegations against Plaintiff out of whole cloth. Additionally, aside from the fact that Defendants had a reasonable objective basis to conclude that, at a minimum, child abuse or neglect occurred, there is also the problem that Plaintiff "[has] failed to cite controlling federal constitutional law

18

setting forth clearly established rights that an objectively reasonable person in defendants' position would have known were being violated by the child abuse investigation and surrounding circumstances." *Vermeesch v. Hall*, Case No. 98-74093, 2000 WL 654953, at *7 (E.D. Mich. Apr. 24, 2000) (defendants entitled to qualified immunity for discretionary decision to place the plaintiffs on central registry, where there was a reasonable objective basis to suspect child abuse and neglect) (quoting *Achterhof v. Selvaggio*, 757 F.Supp. 837, 840 (W.D. Mich. 1991)). In sum, the record reflects that Defendants had a good faith basis for temporarily placing Plaintiff's name on the Central Registry. However, even if they did not, Defendants are still entitled to qualified immunity because Plaintiff has failed to demonstrate that Defendants violated clearly established constitutional rights of which a reasonable person would have known. *See Vermeesch, supra*, at *8.

Plaintiff's First Amendment claim also fails to state a viable claim for relief. Plaintiff alleges that her placement on the Central Registry, which temporarily limited her ability to visit her mother (because she was also serving as a foster parent), abridged her rights of association and family integrity under the First Amendment. Federal courts have rejected attempts to frame Fourteenth Amendment familial integrity claims as First Amendment violations, as Plaintiff does here. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ..."); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected

by the Fourteenth Amendment").  Here, viewing the issue in the light most favorable to Plaintiff, the question is whether Defendants' decision to place Plaintiff on the Central Registry violated Plaintiff's rights under the 14th Amendment to family integrity and whether such rights were clearly established.  While the right to family integrity may be clearly established, Defendants' actions in placing Plaintiff on the Central Registry are entitled to qualified immunity because those actions were not knowingly or intentionally aimed at interfering with anyone's right to familial integrity; they were aimed at carrying out the statutory obligation to protect the interests of foster children.  The purpose of placing Plaintiff on the registry was *not* to impact Plaintiff's familial relationship with her mother, it was directed at protecting children and merely had the collateral consequence of preventing Plaintiff from visiting any other environment where foster children were present.[4]  Plaintiff's mother's decision to serve as a foster parent interfered with Plaintiff's opportunity to visit her as much as Defendant's decision to place her on the Central Registry did.  Under these circumstances, Defendants are entitled to qualified immunity and this claim must also be dismissed.

Plaintiff has not borne the burden of showing that Defendants' conduct violated a clearly-established right. Qualified immunity therefore bars Plaintiff's First Amendment/Fourteenth Amendment claim.

---

[4]  It should be noted that the decision to place Plaintiff on the registry imposed no limits on her ability to visit her mother in settings where foster children were not present.

### F. Plaintiff's Civil Conspiracy Claim Fails To State A Claim

Plaintiff also alleges Defendants conspired to take the Children away, place her on the Central Registry, and revoke her foster care license. A civil conspiracy requires Plaintiff to show "the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). As explained above, Plaintiff has failed to state a viable claim for the deprivation of a federal right. Consequently, she cannot maintain a separate civil conspiracy claim founded on a scheme to deprive such federal rights.

### G. The Court Declines To Issue A Declaratory Judgment

Plaintiff's Complaint also requests that the Court issue a declaratory judgment that two Michigan statues are unconstitutional. Specifically, Plaintiff asks the Court declare unconstitutional and unlawful: (i) Mich. Comp. Laws § 712A.13b(5) "to the extent it prohibited Plaintiff[] from obtaining a fair hearing after the [C]hildren were removed and where the FCRB disagreed with said removal"; and (ii) Mich. Comp. Laws § 722.628d and "other related statutes, rules and policies and practices of the state to the extent it provides for placing a foster parent on Central Registry and consequent revocation of her foster care license without notice or an opportunity to be heard" (Dkt. 29, Amend. Compl., Pg ID 224).

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing

21

of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration...."  The statute has repeatedly "been

understood to confer on federal courts unique and substantial discretion in deciding

whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277,

286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

     The Supreme Court, however, has cautioned that "the federal courts ... do not

render advisory opinions.  For adjudication of constitutional issues[,] 'concrete legal

issues, presented in actual cases, not abstractions' are requisite."  *United Pub.*

*Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754

(1947) (quoting *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 423, 61

S.Ct. 291, 85 L.Ed. 243 (1940)).  To that end, the Supreme Court has directed that

federal courts:

> [M]ust be alert to avoid imposition upon their jurisdiction through
> obtaining futile or premature interventions, especially in the field of
> public law. A maximum of caution is necessary in the type of litigation
> that we have here, where a ruling is sought that would reach far beyond
> the particular case. Such differences of opinion or conflicts of interest
> must be 'ripe for determination' as controversies over legal rights. The
> disagreement must not be nebulous or contingent but must have taken
> on fixed and final shape so that a court can see what legal issues it is
> deciding, what effect its decision will have on the adversaries, and some
> useful purpose to be achieved in deciding them.

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 243–44, 73 S.Ct. 236,

97 L.Ed. 291 (1952).  "[T]he question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment."  *Preiser v. Newkirk*, 422 U.S. 395,

22

402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (internal emphasis and quotation marks

omitted).

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)

(internal quotation marks omitted). Consequently, the Court considers the following

factors in determining whether to issue declaratory judgment in a case:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326. "[T]he *Grand Trunk* factors and their cousins in other circuits direct the

district court to consider three things: efficiency, fairness, and federalism." *W.*

*World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  The *Grand Trunk* factors

have not been given a set weight and the importance of each factor varies depending

on the facts particular to each case.  *Id.*

Considering the factors set forth above, the Court declines to issue a

declaratory judgment in this matter.  Most fundamentally, as discussed in the

sections above, Plaintiff's constitutional claims in this case suffer from fatal

infirmities.  Namely, Plaintiff has failed to identify a constitutionally protected

liberty interest in the continued foster care of the Children.  Furthermore, a declaration that – going forward – the State must provide foster parents with notice and an opportunity to be heard before removing foster children will not have any impact on the parties in this case.  The pleadings indicate that Plaintiff does not currently have any foster children in her care.  As to Plaintiff's claims concerning her placement on the Central Registry or the revocation of her foster care license, these claims are also now moot, as Plaintiff has been removed from the Central Registry and her foster care license has been restored.   In sum, any declaratory relief in this Court would not settle Plaintiff's alleged controversy, or clarify any legal relations currently at issue.

Finally, the Court finds that Plaintiff's request for declaratory relief involves important public policy matters for the State.  The State has a significant interest in protecting foster children from situations that may pose a danger to their health, safety, and welfare.  Likewise, the State has substantial interest in the orderly administration of its foster care system.  While not directly analogous, the reasoning underlying the Sixth Circuit's admonition that, "[u]nder the principles of comity and deference to state expertise in the field of domestic relations, it has been our consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment terminating parental rights" *Stephens v. Hayes*, 374 Fed. App'x 620, 623 (6th Cir. 2010) applies with equal force here.  For all these reasons, the Court declines to grant Plaintiff the declaratory relief she requests.

24

### H. Remaining State Law Claims

The Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of abuse of process and intentional infliction of emotional distress. Generally, "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). As such, these claims are dismissed without prejudice.

## III.   CONCLUSION

For the reasons set forth above, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**. Specifically,

Defendant LSSM's motion to dismiss the *Monell* claims brought against it (Dkt. 37) is **DENIED AS MOOT**, as the Court dismissed these claim on alternate grounds;

Defendants' (LSSM employees) motion for summary judgment as to all state claims (Dkt. 38) is **DENIED AS MOOT**, as the Court declined to exercise supplemental jurisdiction over these claims, and dismissed them without prejudice;

Defendants' (LSSM employees) motion for summary judgment based on immunity (Dkt. 39) is **GRANTED IN PART** and **DENIED IN PART**. This motion is granted with respect to qualified immunity, and denied as moot with respect to absolute immunity;

25

Defendants' (LSSM employees) motion to dismiss the Children's claims based on Plaintiff's lack of standing (Dkt. 40) is **GRANTED**.  The claims brought by Plaintiff on behalf of the Children are dismissed without prejudice;

The State Defendants' motion to dismiss (Dkt. 43) is **GRANTED IN PART** and **DENIED IN PART**.  This motion is granted to the extent that it argues that Plaintiff fails to state a claim, that the State Defendants are entitled to qualified immunity, that Plaintiff lacks standing to raise claims on behalf of the Children, and that the Court should decline to award Plaintiff declaratory relief.  The arguments concerning abstention and absolute immunity are denied as moot, as the Court dismissed Plaintiff's claims on alternate grounds;

Defendants Reeves and Sommerville's motion for partial summary judgment as to all state claims (Dkt. 49) is **DENIED**, as the Court declined to exercise supplemental jurisdiction over these claims and dismissed them without prejudice;

Defendants Reeves and Sommerville's motion for summary judgment based on immunity (Dkt. 50) is **GRANTED IN PART** and **DENIED IN PART**.  This motion is granted with respect to qualified immunity, and denied as moot with respect to absolute immunity;

Defendants Reeves and Sommerville's motion to dismiss the Children's claims based on Plaintiff's lack of standing (Dkt. 51) is **GRANTED**.  The claims brought by Plaintiff on behalf of the Children are dismissed without prejudice;

Plaintiff's motion to disqualify the MCI superintendent as the Children's general guardian, and appoint her daughter as the Children's next friend (Dkt. 69) is **DENIED**.

In sum, Plaintiff's federal claims (Counts I-VI) are **DISMISSED WITH PREJUDICE**. Since the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts VII & VIII), those claims are **DISMISSED WITHOUT PREJUDICE**. Finally, since Plaintiff does not have standing to bring claims on behalf of the Children, and any claims asserted on their behalf are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2017

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 28, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager